UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00144-MOC-DSC

| | | |
|---|---|---|
| ASIA CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TOP SHELF ENTERTAINMENT, LLC | ) | |
| RCI HOSPITALITY HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' Motion for Summary Judgment (#29). The matter has been fully briefed and is ripe for review. Having considered defendants' motion and reviewed the pleadings, the court enters the following Order.

**I.  Background**

This is a case of an exotic dancer who alleges sexual harassment at her former workplace. Plaintiff Asia Clark worked for Club Onyx, or "Onyx," in Charlotte, NC starting in 2007. Clark Aff. (#31-1) at 1. Eight years later, her relationship with Onyx ended when she was not offered a new contract to perform. (#30) at 3.

In her Amended Complaint (#18), Plaintiff Clark alleges sexual harassment amounting to a hostile work environment, *quid pro quo* harassment, and constructive discharge. *Inter alia*, the plaintiff alleges that the harassment and unwelcome sexual

-1-

advances of a supervisor, Mr. Louis Kilgo,[1] affected the tangible aspects of her employment, as she was subjected to "intimidation, ridicule, and insult." (#28) at 4-5. Specifically, Mr. Kilgo would allegedly insist on Plaintiff Clark revealing her breasts during her performances at Onyx "nearly every time [she] worked." Clark Aff. (#31-1) at 3. Plaintiff Clark asserts that during her tenure at Onyx, she "never once performed topless."[2] Clark Aff. (#31-1) at 2.

As a condition of her employment, Plaintiff Clark was required to sign an "Entertainer License Agreement." See 2014 Agreement (#31-2). Plaintiff signed these agreements throughout her tenure at Onyx, including in 2010, 2012, 2013, and 2014. See Agreements (#30-4). These agreements noted that the entertainer had an opportunity to review the agreement with an attorney prior to signing. Each agreement notes that the entertainer agrees to "comply with any House Rules…which includes, without Limitation that Licensee shall: (a) Perform clothed and topless..." Agreements (#30-4) at 2, 4, 6, and 8.

## II. Applicable Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] As noted in Plaintiff's Response (#31), Mr. Kilgo was referred to as "Mr. Kilmore" throughout the Amended Complaint (#18).

[2] There is a factual dispute as to whether Ms. Clark ever performed her exotic dances at Onyx while topless. As noted below, must be resolved in the non-moving party's (plaintiff's) favor. Defendants in several affidavits claim that she performed both topless and clothed. See Def. Memorandum (#30) at 2. Ms. Clark, in her affidavit, asserts she never performed topless. Clark Aff. (#31-1) at 1.

FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is

whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

### A. Discussion

Defendants' Motion for Summary Judgment (#29) and its accompanying Memorandum (#30) assert several lines of argument. They argue:

i. RCI Hospitality Holdings, Inc. is not a proper party to this suit; and

ii. The plaintiff has failed to demonstrate a viable Title VII claim for sexual harassment.

Def. Memorandum (#30) at 4-6. Each of these arguments will be addressed *seriatim* below.

### 1. RCI Hospitality Holdings, Inc.

Defendant contends that RCI Hospitality Holdings, Inc. ("RCI HH") is not a proper party to this lawsuit and that summary judgment should be granted to it based on improper joinder.

It is undisputed that RCI HH is the parent company of its wholly-owned subsidiary Top Shelf Entertainment, LLC ("Top Shelf"), which operated Club Onyx. See Corporate Disclosure (#22); Def. Memorandum (#30) at 4. It is also undisputed that RCI HH and Top Shelf are separate legal entities, with RCI HH located in Texas and Top Shelf being a North Carolina LLC. See (#31-5); (#31-7).

Plaintiff alleges a unity of ownership and operative control between parent, RCI HH, and its subsidiary, Top Shelf, sufficient to make the parent company liable for the

purported sexual misconduct at Onyx. In support of this argument, Plaintiff Clark notes that Top Shelf's North Carolina Secretary of State filing lists a RCI HH executive and that the personnel policies came not from the individual club but "from corporate." Plaintiff Resp. (#31) at 7. As plaintiff noted, parent companies are not generally the "employer" of its subsidiary's employees. Plaintiff Resp. (#31) at 6. Even so, parent companies *may* be deemed to be the "employer" of its "subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir. 1987). Plaintiff cites to Johnson in support of her contention that RCI HH was, ultimately, the "employer" of Onyx's personnel.

In Johnson, several bakery employees lost their jobs and were replaced with younger employees. As such, they brought an age discrimination suit against the parent company, Flowers Industries, and its subsidiaries. Writing for the panel, Judge Wilkinson noted that "the doctrine of limited liability creates a strong presumption" that the parent is not the employer of its subsidiary's employees and that a "normal parent-subsidiary relationship" would allow the parent to "retain the benefits of limited liability." Johnson, 814 F.2d at 981. Ultimately, the Johnson plaintiffs "failed to show that the relationship between [parent] and [subsidiary] was anything more than a normal parent-subsidiary relationship" and "produced no evidence that Flowers excessively interfered with the business operations of [subsidiary]." Id. As the appellate court agreed that the relationship between parent and subsidiary in that case was "one of general oversight, not

-5-

attention to detail," and was "characteristic of a parent-subsidiary relationship," it did not find the parent to be the "employer" of subsidiary's personnel. Id at 982.

As currently pled, there is scant evidence of RCI HH's purported domination over its subsidiary that would overcome Johnson's "strong presumption" of limited liability. The court recognizes that under certain circumstances a parent company can be considered a "single employer" for Title VII liability. See Hukill v. Auto Care, Inc., 192 F.3d 437 (4th. Cir 1999) cert. denied, 529 U.S. 1116, (2000). Even so, the court recognizes that the tests to determine employment status for the parent-subsidiary relationship are directed at "analyzing the amount of control the alleged joint employer had over employees." Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693, 725 (D. Md. 2013) (citation omitted).

Plaintiff's Response (#31) notes that "discovery has not yet concluded." The Court takes this argument as one under Rule 56(d), Federal Rules of Civil Procedure. Accordingly, there may be additional evidence to demonstrate the level of control that the parent company, RCI HH, exercised over the operations and finances of its wholly-owned subsidiary. The court will deny the Motion for Summary Judgment as to the removal of RCI HH at this time to allow for further discovery as to the parent-subsidiary relationship. Fed.R.Civ.P. 56(d)(2).

## 2. Sexual Harassment Claims

Plaintiff has articulated several allegations regarding sexual harassment, including a hostile work environment, *quid pro quo* harassment, and constructive discharge. Each of these allegations revolve around her working topless or clothed at Onyx as an exotic dancer and the pressure allegedly placed on her by her supervisor to remove her top not just for customers, but for his gratification.

In particular, plaintiff contends that her work environment was made hostile because Mr. Kilgo constantly harassed her "to remove her top and show him her breasts, because he thought they were 'pretty'" and he did so "nearly every time she worked." Plaintiff Resp. (#31) at 9-10. Plaintiff further alleges that her supervisor demanded that she reveal her breasts in areas in which no customers were present, such as the dressing room, or when there were no customers in the club. Plaintiff Resp. (#31) at 10. Further, plaintiff contends that some performers were allowed to perform clothed and the requirement that performers work "clothed and topless" was not consistently enforced. Plaintiff Resp. (#31) at 11.[3] As to alleged *quid pro quo* harassment, plaintiff contends that Mr. Kilgo retaliated against her with adverse employment action after she refused to show him her breasts. Plaintiff Resp. (#31) at 11.

---

[3] As defendants note, the agreement which plaintiff signed contains a provision against waiver for future enforcement and seems to allow for inconsistent enforcement over time. See Def. Reply (#32); 2014 Agreement (#31-2) at ¶ 36 ("Licensor's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect the validity or enforceability of this Agreement or operate or be construed as a waiver of any future enforcement of that provision or any other provision of this Agreement.").

The court recognizes that in a typical employment situation, an employer asking a female employee to reveal her breasts would be a textbook case of sexual harassment, taking the case straight to a jury. Where, however, the occupation of plaintiff is that of an exotic dancer that bright line becomes blurred. While the employer can certainly instruct the exotic dancer to remove her top in relation to her duties as an adult entertainer, Kilgo Affidavit (#30-2) at 2, that ability does not give the employer license to demand that the employee remove her top simply for his own personal gratification.

The managers of Club Onyx claim that they were merely enforcing an agreement wherein the plaintiff herself repeatedly agreed in writing to "perform clothed and topless." The defendants characterize plaintiff's allegations of sexual harassment as the club managers insisting "she perform and interview topless." Def. Memorandum (#30) at 6.

Workers,[4] including exotic dancers, have protections at the workplace, including protections from sexual harassment (especially by their employers), sexual assault, and other sexual misconduct. Even if the plaintiff was asked to perform topless as a condition of her contract, this does not mean that she had to accept sexual misconduct at her workplace. While her license agreement stated she was to *perform* topless and clothed, that agreement would not enable the company to dictate that she go topless at the will of her supervisors, particularly when she was not performing and during times when there

---

[4] The court notes that the relationship between the Top Shelf and plaintiff was expressly defined as a Licensor/Licensee relationship as per the terms of the "Entertainer License Agreement." 2014 Agreement (#30-2) at ¶ 8.

were no customers. It is, however, conceivable that Title VII would not be violated where an employer asks an exotic dancer to perform topless outside the presence of customers, such as during interviews or rehearsals. But that is not all that plaintiff alleges; rather, read in a light most favorable to her, she contends that Mr. Kilgo asked her to remove her top for personal, prurient interests unrelated to a legitimate business need.

As pled, this case is more than an employer asking an employee to act in accordance with a written agreement. Plaintiff has alleged conduct, which if true, could be well outside the scope of her performance agreement with Onyx. As with RCI HH, resolution of this issue would benefit from conducting discovery aimed at finding out precisely what occurred, both on and off stage.

### B. Conclusion

The court has reviewed the allegations of sexual harassment involving Club Onyx. At this time, discovery has not concluded and additional facts may aid the court and the parties in resolving this fact-specific case. The close of discovery is scheduled for May 31, 2017, and the defendants may revisit its Rule 56 arguments then. See Pretrial Order and Case Management Plan (#24). The court notes that the mediation deadline in this matter has been set for June 2017, Pretrial Order and Case Management Plan (#24), and the court typically will not address a summary judgment motion until mediation has been exhausted. The parties are encouraged to attempt to resolve this matter outside of litigation.

# ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Summary Judgment (#29) is **DENIED without prejudice** as discovery has not yet concluded. Upon the close of discovery and after mediation has been exhausted, the defendants may resubmit a Rule 56 Motion for Summary Judgment.

Signed: March 13, 2017

Max O. Cogburn Jr
United States District Judge